IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 16-00237-01-CR-W-FJG |
| ROBERT L. WHITE, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS

Before the Court is Defendant's Motion to Suppress Evidence and Statement. Defendant moves the Court to suppress evidence resulting from the March 8, 2013, warrantless search of his vehicle. For the following reasons, Defendant's motion should be denied.

### *I. BACKGROUND*

An indictment was returned on July 19, 2016, charging Defendant with three counts of possession with the intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), ten counts of distribution of cocaine base, in violation of 21 U.S.C. §§ 841(1)(1) and (b)(1)(C), one count of possession with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant filed a motion to suppress (Doc. No. 16) and the government responded (Doc. Nos. 20, 31). An evidentiary hearing was then held. The government appeared by Assistant United States Attorney Jeffrey McCarther. Defendant was present, represented by appointed counsel Marc Ermine. The

government called Kansas City, Missouri Police Department Sergeant Jeffrey Hughley[1] and Kansas City, Missouri Police Department Detective Robert Evans[2] to testify. The following exhibits were admitted into evidence:

    Government's Exhibit 1:    <u>Miranda</u> Waiver
    Government's Exhibit 2:    Kansas City, Missouri Police Department Towing Policy
    Government's Exhibit 3:    Tow-In Report

    Defendant's Exhibit 1:    Officer Robert Evans' Incident Report

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact.

1.    In February of 2013, Kansas City, Missouri Police Department Detective Jeffrey Hughley became aware of a man going by the name "B-BOP" through a confidential source and also through co-workers who had prior incidents involving "B-BOP" (Tr. at 4, 16). B-BOP was known to sell a large amount of crack cocaine (Tr. at 4). Law enforcement later identified B-BOP as the defendant (Tr. at 4-5).

2.    Through a confidential source, Detective Hughley learned Defendant was currently driving a white Dodge Avenger with an out-of-state plate from either Florida or Georgia, which was a rental vehicle (Tr. at 5, 6, 17). Both Florida and Georgia plates are white with orange (Tr. at 6).

3.    On March 8, 2013, Detective Hughley was on patrol duty in the area of 76th or

---

[1] Jeffrey Hughley held the rank of "Sergeant" when he testified at the suppression hearing. On the date of Defendant's arrest, however, he was a detective with the Kansas City, Missouri Police Department (Tr. at 3). He will, therefore, be referred to as "Detective Hughley" in this Report and Recommendation.

[2] Robert Evans held the rank of "Detective" when he testified at the suppression hearing. On the date of Defendant's arrest, however, he was an enforcement officer for the narcotics and vice division of the Kansas City, Missouri Police Department (Tr. at 24). He will, therefore, be referred to as "Officer Evans" in this Report and Recommendation.

77th and Troost (Tr. at 5-6).  At approximately 1:30 p.m., Detective Hughley observed a white Dodge Avenger with an out-of-state plate in the parking lot of a music store (Tr. at 5-6). The plate matched the color characteristics of Florida and Georgia plates (Tr. at 7).

4. Detective Hughley sat in the parking lot to conduct covert surveillance and saw Defendant exit the store and enter the driver's side of the vehicle (Tr. at 7).  He recognized Defendant from photographs he had been shown by co-workers (Tr. at 7).

5. After entering the vehicle, Defendant exited the parking lot and began traveling northbound (Tr. at 7, 17).

6. Detective Hughley followed Defendant covertly in his unmarked police vehicle (Tr. at 7-8).  While doing so, he observed Defendant fail to use a turn signal when changing lanes at Meyer and Troost (Tr. at 8).  Failure to use a turn signal is a violation of a traffic ordinance (Tr. at 8).  As a result, Detective Hughley radioed for a marked car to conduct a traffic stop (Tr. at 8-9, 17-18).

7. Kansas City, Missouri Police Officer Robert Evans received Detective Hughley's request (Tr. at 25).  He was told that Detective Hughley had observed a black male driving a vehicle northbound on Troost (Tr. at 25).  That individual had recently been arrested with a large amount of crack cocaine (Tr. at 25).  Detective Hughley had observed the vehicle to change lanes without using a signal, and requested it be pulled over (Tr. at 25).  The vehicle was described as a white Dodge Avenger with a Florida tag (Tr. at 26).

8. Officer Evans observed the vehicle at 63rd and Troost traveling northbound (Tr. at 26).  He, therefore, activated his emergency equipment to conduct a traffic stop (Tr. at 26). The vehicle turned across oncoming traffic and pulled into the parking lot of Mad Jack's Fish Restaurant (Tr. at 18, 26, 36).

9. Officer Evans made contact with Defendant, the driver, and asked for identification (Tr. at 27, 41). Defendant produced a Missouri driver's license but could not produce proof of insurance (Tr. at 27). Defendant also produced a blank rental agreement for the vehicle (Def. Exh. 1).

10. There were five to six other officers on the scene (Tr. at 29).

11. A computer check revealed Defendant's driver's license had been suspended (Tr. at 28, 36, 41).

12. Law enforcement asked Defendant for consent to search the vehicle, but Defendant refused (Tr. at 28, 29, 42).

13. As a result of the car stop, Defendant was given a ticket for the lane violation (Tr. at 10, 33). The traffic ticket was not given to Defendant, but later placed in his property bag at Police Headquarters (Tr. at 11, 20, 33). Defendant was arrested for driving while suspended, which was an arrestable felony offense (Tr. at 9-10, 28, 36, 41). A search incident to arrest revealed $1,983 in Defendant's front left pant pocket (Tr. at 29).

14. Officer Evans ordered the Dodge Avenger to be towed (Tr. at 29). He did so because Defendant had been arrested and the vehicle was parked on private property (Tr. at 29).

15. Prior to towing the vehicle, the officers performed an inventory search (Tr. at 30). Officer Evans testified inventory searches routinely include the passenger compartment and under the hood of the vehicle (Tr. at 30).

16. The Kansas City, Missouri Police Department's Towing Policy Provides, in relevant part:

> B. In the officer's discretion, vehicles may be towed when:
> . . .
> 6. Any vehicle is parked on private property or upon an area

4

Case 4:16-cr-00237-RK    Document 37    Filed 06/19/17    Page 4 of 9

> developed as an off-street parking facility without the consent of the owner, lessee or person in charge of any such property or facility, and upon complaint to the police department by the owner, lessee or person in charge of such property or facility, and a summons has been presented to the owner or operator and affixed to the vehicle.

(Tr. at 34-35; Gvt. Exh. 2). The policy defines a "content inventory" as:

> a detailed inventory and listing of items located inside of the vehicle being towed. It is required for the towing and protective custody of all vehicles. A content inventory permits locked and/or closed compartments (e.g., trunk or glove compartment) and containers to be opened ether by key or by force to determine the content. Any contraband, property of evidentiary value, or portable locked compartment that is not opened will be recovered and forwarded to the Property and Evidence Section.

(Gvt. Exh. 2).

17. While the Dodge Avenger was being inventoried, an employee of Mad Jack's informed the officers that they did not want the vehicle left on their property, since they would rather have the space for paying customers (Tr. at 30, 37, 43).

18. During the inventory search, Officer Hendershot noticed a glove between the driver's side engine compartment and frame that appeared to be out of place (Tr. at 32). He opened the glove and found two clear plastic bags that each contained cocaine base (Tr. at 10, 31-32).

19. After his arrest, Defendant was taken to Police Headquarters (Tr. at 11). Detective Hughley reported to the headquarters' detention facility at approximately 3:30 p.m. (Tr. at 12). He made contact with Defendant on the eighth floor and transported Defendant to the interview rooms on the second floor (Tr. at 12-13).

20. Upon entering an interview room, Detective Hughley and Defendant sat on opposite sides of the table (Tr. at 14-15). Defendant was not in handcuffs or wearing leg

shackles (Tr. at 20-21).

21.     Detective Hughley read Defendant his Miranda rights (Tr. at 13). Defendant did not sign the waiver form, but stated he understood his rights and requested a lawyer (Tr. at 13-14; Gvt. Exh. 1). Detective Hughley told Detective the interview was complete (Tr. at 14). Defendant then wrote on a board in the interview room, "How can I make this go away?" (Tr. at 14).

22.     Detective Hughley testified he did not use any type of intimidating tactics, coerce or threaten Defendant into writing on the board (Tr. at 15).

### III.    LEGAL ANALYSIS

Defendant seeks suppression of the cocaine base recovered during the March 8, 2013 search on grounds of Fourth Amendment violations. He also seeks to suppress his subsequent statement as fruit of the poisonous tree. The Government maintains that Defendant lacks standing to challenge the search, but that the search was lawful.

### A.    STANDING

Fourth Amendment rights are personal and may not be asserted vicariously. See United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 2004). A "defendant moving to suppress bears the burden of proving he had a legitimate expectation of privacy that was violated by the challenged search." United States v. Muhammad, 58 F.3d 353, 355 (8th Cir. 1995). "In United States v. Muhammad, [the Eighth Circuit] concluded that the defendant lacked standing to challenge the search of his rental vehicle because the automobile was leased in another person's name and the defendant presented no evidence of permission to use the vehicle." See United States v. Best, 135 F.3d 1223, 1225 (8th Cir. 1998). See also United States v. Lumpkins, 687 F.3d 1011, 1013 n.2 (8th Cir. 2012); United States v. Long, No. 13-00405-01-CR-W-GAF, 2014 WL 2505222 at

6

*4 n.3 (W.D. Mo. June 3, 2014); United States v. Lumpkins, No. 11-00054-01-CR-W-HFS, 2011 WL 3320530 at *7 (W.D. Mo. July 6, 2011).

The record created at the suppression hearing is devoid of any evidence on the issue of Defendant's expectation of privacy in the Dodge Avenger. The evidence establishes that the vehicle was a rental. The rental agreement that Defendant produced to Officer Evans, however, was blank. In addition to the issue of whether Defendant was the lessee or an authorized driver, there was no evidence that Defendant had permission to use the vehicle. Defendant failed to satisfy his burden.

B.  INVENTORY SEARCH

Even if Defendant were determined to have standing, the March 8, 2013 search is constitutionally permissible. A search by law enforcement must be conducted pursuant to a warrant in order to be "reasonable" under the Fourth Amendment unless one of the "few specifically established and well-delineated exceptions" to the warrant requirement exists. United States v. Marshall, 986 F.2d 1171, 1173 (8th Cir. 1993)(quoting Mincey v. Arizona, 437 U.S. 385, 390 (1978)); see also U.S. CONST. amend. IV. One such exception is an inventory search. Id. at 1173-74. See also United States v. Kennedy, 427 F.3d 1136, 1143 (8th Cir. 2005)("Police may conduct a warrantless search of a lawfully-impounded vehicle even in the absence of probable cause."). When the driver of a car is arrested, the police may impound the vehicle and conduct an inventory search. United States v. Stephens, 350 F.3d 778 (8th Cir. 2003). "The central question in evaluating the propriety of an inventory search is whether, in the totality of the circumstances, the search was reasonable." United States v. Hall, 497 F.3d 846, 851 (8th Cir. 2007)(quoting Kennedy, 427 F.3d at 1143). "Inventory searches that are 'conducted according to standardized police procedures' are reasonable." Id. (quoting

7

Kennedy, 427 F.3d at 1143). See also United States v. Garreau, 658 F.3d 854, 857 (8th Cir. 2011). "The requirement that officers follow standard procedure in conducting inventory searches does not foreclose the use of some discretion by officers 'so long as that discretion is exercised according to standard criteria and on the basis or something other than suspicion of evidence of criminal activity.'" Hall, 497 F.3d at 851 (quoting Colorado v. Bertine, 479 U.S. 367, 375 (1987)). The presence of an investigative motive, however, "does not invalidate an otherwise valid inventory search." United States v. Arrocha, 713 F.3d 1159, 1164 (8th Cir. 2013)(quoting United States v. Garner, 181 F.3d 988, 991 (8th Cir. 1999)). See also United States v. Harris, 795 F.3d 820, 822 (8th Cir. 2015)(quoting United States v. Pappas, 452 F.3d 767, 771 (8th Cir. 2006)("The police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity."); Marshall, 986 F.2d at 1174-75.

In this case, Defendant argues the inventory search was not proper because the vehicle was lawfully parked in the parking lot of a public restaurant and that the purpose behind the search was purely investigatory. Eighth Circuit law and the Kansas City, Missouri Police Department's towing policy forecloses this argument. Defendant was arrested and taken into custody for driving with a suspended license. The vehicle was parked in the parking lot of Mad Jack's Fish Restaurant, which is private property. Section B(6) of the Kansas City, Missouri Police Department's towing policy thus permitted the vehicle to be towed and, correspondingly, inventoried. Cf. United States v. Arrocha, 713 F.3d 1159, 1164 (8th Cir. 2013)(quoting United States v. Martin, 982 F.2d 1236, 1240 (8th Cir. 1993))( "Police may take protective custody of a vehicle when they have arrested its occupants, even if it is lawfully parked and poses no public safety hazard.").

Defendant also argues law enforcement exceeded the scope of a permissible scope when they searched the vehicle's engine compartment. I disagree. The Kansas City, Missouri Police Department's towing policy permits officers to search in locked and/or closed compartments. Officer Evans testified inventory searches include looking under the hood of the vehicle. See United States v. Lumpkin, 159 F.3d 983, 987-88 (6th Cir. 1998)(holding officer's testimony that he always raised the hood when performing inventory searches was sufficient, even when there was no written policy regarding the engine compartment). Furthermore, given Defendant was known to sell crack cocaine and the fact that law enforcement found $1,983 in Defendant's pocket in a search incident to his arrest, the scope of the search was proper. See Pappas, 452 F.3d at 772; United States v. Lewis, 3 F.3d 252, 254 (8th Cir. 1993).

## IV. CONCLUSION

For the above-stated reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying Defendant's motion to suppress.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
June 19, 2017